## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**HELEN ALFORD**                                    :
                                                    :
     Plaintiff,                           :
                                                    :
     vs.                                  :    C. A. No. 07-CV
                                                    :
**CITY OF PHILADELPHIA,**                           :
                                                    :
**CITY OF PHILADELPHIA DISTRICT
ATTORNEY'S OFFICE**

     **and**

**Maria McLaughlin, Chief of the Child
Support Enforcement Unit for the
Philadelphia District Attorney's Office,
in her individual capacity;**

     **and**

**Rachel Kimmich, Chief of the Child
Support Enforcement Unit for the
Philadelphia District Attorney's Office,
in her individual capacity;**
                                                    :
     Defendants.                          :

## COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    Helen Alford (hereafter "Plaintiff") brings this action pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act, 42

U.S.C. § 12101, *et seq.,* Sections 504 and 505 of the Rehabilitation Act, 29 U.S.C. § 793 *et seq.,*

and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), and 42 U.S.C. § 1983

(hereafter "Section 1983") to compensate her for injuries she sustained because the Defendants,

the City of Philadelphia, the City of Philadelphia District Attorney's Office, (hereafter

"municipal Defendants" or "City of Philadelphia"), failed to take adequate remedial measures to address a hostile environment created by a co-worker in Ms. Alford's workplace in the Philadelphia District Attorney's Office (hereafter "DA"s Office).  Defendants, individually and/or collectively retaliated against Ms. Alford  because of her legitimate complaints of discrimination and because of her disabilities, which she was forced to disclose to the Defendants during the course of events which ensued after she first sought relief from the severe and pervasive workplace harassment which she was forced to endure on an almost daily basis from July, 2005 through May, 2006.   As a direct result of the  Defendants' individual, joint, and several actions, Plaintiff suffered severe emotional distress which exacerbated the impact of her disability and created permanent debilitation which thereafter prevented her from performing her job duties and substantially limited her ability to work.  Against the municipal Defendants, Plaintiff seeks back wages, front pay, pension benefits, and other emoluments of employment which she lost as a result of Defendant's protracted, intentional and illegal employment actions, as well as compensatory damages.  Against the individual Defendants Plaintiff seeks both compensatory and punitive damages.

## II.    JURISDICTION AND VENUE

2.    The Court has jurisdiction over this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* (hereafter "Title VII"), the Americans with Disabilities Act, 42 U.S.C. 12101, (hereafter "ADA") and the Rehabilitation Act, 29 U.S.C. § 793 *et seq.* (hereafter "Section 504").  Jurisdiction is further predicated upon 28 U.S.C. § 1331, this being an action arising under the laws of the United States, and 28 U.S.C. § 1343.  Jurisdiction over the PHRA claim is predicated upon 43 P.S. § 962 (c) and this Court's supplemental jurisdiction.

3.     All of the actions complained of herein took place within the Eastern District of Pennsylvania, and all of the Defendants reside therein.

**III**.     **PARTIES**

4.     Plaintiff is a citizen of the United States who resides in Philadelphia, Pennsylvania.  She is an employee and a person with "non-job-related handicaps" as defined by Title VII the PHRA, 43 P.S. § 954 (c). Ms. Alford is a qualified individual with a disability as defined by the ADA and Section 504.  Ms. Alford is African-American.

5.     City of Philadelphia is a municipal corporation and/or governmental entity and an employer as defined by Title VII, the ADA, Section 504, and the PHRA.  The City of Philadelphia's principal place of business is located at 1515 Arch Street, Philadelphia, PA.  The City of Philadelphia is a recipient of federal funds for purposes of Section 504.

6.     The District Attorney's Office is an entity of the City of Philadelphia with its own legal identity, which is directed and administered by Lynne Abraham, an elected official who serves as the City's Chief law enforcement officer.  The District Attorney's Office's principal place of business is located at Three South Penn Square, Philadelphia, PA.  The District Attorney's Office is a recipient of federal funds for purposes of Section 504.

7.     Maria McLaughlin is a citizen of the United States and a resident of Pennsylvania. At all times relevant to this Complaint she served as the Chief of the Child Support Enforcement Unit.  Ms. McLaughlin is sued in her individual capacity.

8.     Rachel Kimmich is a citizen of the United States and a resident of Pennsylvania. At all times relevant to this Complaint, Ms. Kimmich served as the Human Resources Officer for the Philadelphia District Attorney's Office.  Ms. Kimmich is sued in her individual capacity.

-3-

IV.     **ADMINISTRATIVE EXHAUSTION**

9.      On December 14, 2005 Ms. Alford filed a Charge of Discrimination with the

Equal Employment Opportunity Commission ("EEOC")  alleging that City of Philadelphia

and/or the Philadelphia District Attorney's Office had discriminated against her on the basis of

her race, religion, and disability beginning on June 1, 2005, and then retaliated against her for her

protected activities in violation of her rights under Title VII and the ADA.

10.     Ms. Alford's Charge of Discrimination was dual filed with the Pennsylvania

Human Relations Commission ("PHRC").

11.     The EEOC issued a Dismissal and Notice of Rights in connection with this

Charge on October 31, 2006.

12.     No exhaustion is required for Mr. Alford's claims under Section 504, nor is she

required to exhaust her damage claims under Section 1983.

V.      **FACTUAL ALLEGATIONS**

13.     Ms. Alford was hired by the municipal Defendants in May, 1997 as a Clerk-

Typist in the Major Trials Unit in the District Attorney's Office at 1421 Arch Street.

14.     Since approximately the age of thirteen, Ms. Alford has suffered from bi-polar

disorder and a depressive illness.  Until the events set forth in this Complaint debilitated her to

the point that she was no longer able to take care of herself, work, or concentrate, and

substantially limited her with respect to other major life activities, Ms. Alford's psychiatric

illness was well-controlled by medication.

15.     Ms. Alford requested a transfer from the Major Trials Unit in 1998 after her

supervisor included information regarding her psychiatric condition in her performance

evaluation, and caused it to be known throughout the Major Trial Unit that she had such a condition.   As a result, Ms. Alford became the subject of ridicule and, in addition to the loss of her privacy with respect to her disability, she suffered extreme embarrassment and humiliation.

16.     Ms. Alford moved to the Pre-Trial Unit, where she worked to the complete satisfaction of her employer until September of 2004, when she transferred to the Child Support Enforcement Unit (CSEU).

17.     Shortly after Ms. Alford began working in the CSEU, Salonie Ripply-Long returned to the unit after having been on leave due to a workers' compensation injury.  Like Ms. Alford, Ms. Long is African-American.

18.     Ms. Long did not perform many of her duties, and for several months, Ms. Alford did them for her, in addition to her own job assignments.

19.     On March 1, 2005 Ms. Alford made a written complaint to Maria McLaughlin, Chief of the Child Support Unit regarding Ms. Long's failure to perform her duties.

20.     Shortly thereafter, Ms. Long began a campaign of harassment against Ms. Alford in which she accused Ms. Alford of not being loyal to her race, and barraged her with accusations of a religious nature.  For example, Ms. Long alleged that Ms. Alford was not a good Christian; she likened Ms. Alford to  "the devil" and called her  "Satan."

21.     Ms. Long's harassment against Ms. Alford became more pervasive over time, and by June, 2005, permeated Ms. Alford's work environment on an almost daily basis.  Ms. Long frequently accused Ms. Alford of behaving like "white people", referred to her as "Satan", and refused to speak to her in a civil manner because she refused to "deal[] with the devil."

22.     When Ms. Alford attempted to discuss this harassment with Ms. McLaughlin, Ms. McLaughlin informed Ms. Alford that "her hands [were] tied with regard to Ms. Long, as Ms. Long had initiated litigation against the City related to her employment in the CSEU, and that any actions taken against Ms. Long could result in further claims of retaliation on the part of Ms. Long.  Accordingly, Ms. McLaughlin did nothing to protect Ms. Alford from Ms. Long's harassing behavior.

23.     The daily stress of Ms. Long's harassment caused Ms. Alford to suffer a relapse in the management of her bi-polar disorder and depressive illness, which, until then, had been well-managed through medication and had not imposed a barrier to her ability to work.

24.     On June 28, 2005 Ms. Alford again wrote to Ms. McLaughlin to inform her that Ms. Long still refused to do many of her job duties, and that her racial and religious harassment against Ms. Alford had become intolerable.

25.     Because of the stress of dealing with Ms. Long's harassment, and Ms. McLaughlin's failure to take effective remedial measures to address it, Ms. Alford requested a transfer to another unit.  Ms. Alford did this reluctantly as her position in the CSEU was her "dream job" and her request for a transfer was made only because Ms. Long's harassment was making her too ill to function in her every day life.

26.     Ms. McLaughlin still did nothing about Ms. Long's harassing behavior, nor did she act on Ms. Alford's request for a transfer.

27.     On July 11, 2005 and again on July 20, 2005, Ms. Alford wrote to Ms. McLaughlin about Ms. Long's refusal to do her job and her harassing behavior.  She also reported to Ms. McLaughlin that Ms. Long had stolen an important document from her desk the

day before.

28.     Ms. Alford's mental condition was becoming more fragile as Ms. Long's harassment continued unabated.  Ms. Alford required more frequent psychiatric treatment and was forced to take far more medication in order to cope with the stress she was experiencing at work, and to handle her every day life when the day was over.

29.     Because of her fear of discrimination and reprisal, Ms. Alford had never told her superiors in the CSEU about her condition, and desperately wanted to keep it private.

30.     Because Ms. McLaughlin failed to take any effective remedial action to address Ms. Long's harassment, Ms. Alford sought assistance from Ms. McLaughlin's superior, Deputy District Attorney George Mosee.  On September 8, 2005 she wrote to Mr. Mosee requesting to speak with him personally at his convenience regarding an "urgent" matter.

31.     On September 12, 2005, Ms. Alford spoke with Mr. Mosee.  Because of the pervasiveness of the harassment and its debilitating impact on her mental health, Ms. Alford confided her psychiatric condition to Mr. Mosee, and authorized him to speak with her therapist.

32.     Mr. Mosee told Ms. Alford that Ms. Long would be transferred to "the back."

33.     Ms. Long continued her harassment against Ms. Alford.  Twice on September 16, 2005 Ms. Long walked up to Ms. Alford at the reception counter and shouted "I love the Lord!  I love the Lord!  Everybody who Loves the Lord Sing With Me!"  Later, when Ms. Alford was attending to a child support plaintiff, Ms. Long came back and began shouting "Jesus, Jesus, Jesus" so that Ms. Alford could not proceed with her interview.

34.     Ms. Long stole from Ms. Alford's desk so frequently that Ms. Alford could not keep any personal possessions in her desk; Ms. Long continued her barrage of harassment against

Ms. Alford and tape recorded Ms. Alford's conversations in the office.

35.     Even when Ms. Long showed her illegal tape recordings to Ms. McLaughlin, neither Ms. McLaughlin, nor any of the Defendants, nor anyone on their behalf did anything to protect Ms. Alford from Ms. Long's harassing behavior.  Ms. McLaughlin told Ms. Alford to stop writing memos complaining about Ms. Long's behavior.

36.     Ms. Alford continued to come to work and do her job, but her physical and mental condition progressively deteriorated.

37.     On September 20, 2005, Susan Trigona, M.S., Ms. Alford's therapist, wrote to Mr. Mosee and requested that Ms. Alford be allowed to take some time off from work due to the severe depression which she was experiencing due to her co-worker's harassment.

38.     After a short leave, Ms. Alford returned to work and contacted Rachel Kimmich, the Human Resources Officer for the District Attorney's Office, regarding the situation.  She sent documentation to Ms. Kimmich to support her complaint, and advised Ms. Kimmich that the only action that the District Attorney's Office had taken so far was to tell her to stop complaining.

39.     On October 06, 2005 Ms. Alford wrote to Mr. Mosee and explained the nature of her disability and that her current work environment has caused a setback so severe she may need hospitalization; she provided examples of Ms. Long's harassment, including her curses, her direct accusations that Ms. Alford is the embodiment of "Satan" and "the devil", her accusations of intra-racial prejudice against Ms. Alford, as well as the fact that Ms. Long had been stealing mail and papers from Ms. Alford's desk, and had tape recorded her conversations.  She also informed Mr. Mosee that other than being told to ignore Ms. Long and to stop complaining,

nothing had been done to address Ms. Long's discriminatory behavior.  Ms. Alford told Mr. Mosee that she felt that she was experiencing retaliation as a result of her complaints.

40.     On October 12, 2005, Ms. Alford spoke to Mr. Bill Peberdy, the ADA Coordinator in the City's Central Personnel Office.   He informed her that he was sending her concerns to the DA's Human Resources Officer, Rachel Kimmich, and that he would await her response.

41.     Ms. Alford was informed on or about October 14, 2005 that Ms. Long did not wish to accept a transfer.  Ms. Alford asked Mr. Mosee: "please help me so I can stay employed.....my co-worker doesn't want to be moved – ALRIGHT–move ME.

42.     On October 19, 2005, Ms. Alford woke up with a serious rash caused by a reaction to her medication.  Ms. Alford left a message with her office that she would not be in until later, and she went to Deputy Mosee's office to speak with him personally.  She returned to the office at 2:45 p.m.

43.     During her meeting with Deputy Mosee, he informed her that it was not possible to transfer Ms. Long as no one would accept her; he therefore recommended that Ms. Alford accept a transfer back to 1421 Arch Street.

44.     The next day, Ms. Kimmich charged Ms. Alford with an AWOL violation for the previous day's absence, and placed her on the sick abuse list purportedly because as of two months ago, August 17, 2005, Ms. Alford had used five days of sick leave without medical documentation.

45.     In fact, Ms. Alford's therapist had faxed the required documentation to Mr. Mosee, who had forwarded it to Ms. Kimmich.

46.     Ms. Kimmich informed Ms. Alford that she was being returned to the 6th Floor office at 1421 Arch Street where she had started her career at the DA's Office, and where her supervisors had spread rumors regarding her mental illness.  Ms. Kimmich said she would remove the reference to her mental illness from Ms. Alford's 1998 Performance Evaluation; however, Ms. Alford pointed out to Ms. Kimmich that the damage to her reputation had already been done, and that it would be detrimental to her mental and physical health to go back to the 6th Floor.

47.     Even in her present location, personnel in the DA's Office had been treating Ms. Alford differently after having learned about her mental disability: Mr. Mosee kept the door open when he talked to her alone; the knife she kept for protection on the subway was suddenly subject to confiscation; Ms. Alford was asked if she had intentions of physically harming Ms. Long.

48.     The next day, October 21, 2005, Ms. Alford received a written reprimand for her absence from the Office on October 19, 2005.  She was directed to follow the chain of command when dealing with work issues beginning with Ms. McLaughlin.  Ms. Alford had been seeking assistance from Ms. McLaughlin; however, Ms. McLaughlin had failed over the course of several months to take any effective remedial action, other than to tell Ms. Alford to ignore Ms. Long.

49.     Ms. Alford requested a meeting with Ms. McLaughlin so that she could explain that because of her mental health condition, she could not just ignore Ms. Long's harassment.

50.     On November 04, 2005 Ms. Kimmich sent a letter to Ms. Alford purportedly confirming that Ms. Alford had refused a transfer to any office in the building at 1421 Arch Street.   In addition, Ms. Kimmich issued a Sick Abuse Warning to Ms. Alford in which she

-10-

falsely claimed that Ms. Alford had used six uncertified sick days during the year, all of which purportedly occurred several months earlier.

51.     Ms. Alford had not refused to be transferred to any office at 1421 Arch Street; she expressly indicated to Ms. Kimmich that she could not return to the 6th Floor because that is where her mental health history had been the subject of ridicule and scorn during the first years of her employment with the DA's Office, and because many of the same personnel who had participated in that  behavior still worked on the 6th Floor.

52.     Ms. McLaughlin moved Ms. Long's desk.  However, Ms. Long continued to place herself in the empty desk in front of Ms. Alford's work station in order to harass her.  In addition to her religious chanting and accusations against Ms. Alford's likeness to "white people" and "the devil", Ms. Long unplugged her office telephone so that she would not need to answer it. All of the telephone duties fell on Ms. Alford.  Ms. Long alleged that her phone had been "bugged."

53.     Ms. Alford complained again to Ms. McLaughlin on December 20, 2005 and January 12, 2006.  Because Ms. Long had her own office, she queried, why does Ms. Long continue to sit across from Ms. Alford everyday to eat, engage in religious chanting and other harassing behavior, but to do no work?

54.     Ms. McLaughlin witnessed some of Ms. Long's harassing behavior herself, but did nothing.  She asked Ms. Alford to do another E-mail.  Ms. Alford said she had done enough E-mails, and in spite of her E-mails and other efforts to address the problem, nothing had been done.

55.     The constant stress of dealing with Ms. Long's unmitigated harassment caused Ms. Alford to become so ill that she had to be hospitalized.   When Ms. Alford attempted to discuss her need for Family and Medical Leave with Ms. McLaughlin, she refused to speak with her.

56.     Ms. Alford returned to work on or about February 8, 2006 in a new position in Deputy Mosee's office.  Ms. Long remained in the CSEU.

57.     Ms. Alford's mental and physical condition by this time were both severely compromised.  She had difficulty adjusting to the new job assignment, which was exacerbated by the lack of training and a crowded work space.

58.     Between February and June, 2006, Ms. Alford worked sporadically with frequent breaks for psychiatric hospitalization and medical leave.

59.     The stress Ms. Alford endured in the District Attorney's Office exacerbated her disability so that she has been prevented from resuming gainful employment  indefinitely.

60.     Upon her doctor's advice, and to prevent any further deterioration in her condition, Ms. Alford resigned from her employment with the District Attorney's Office on June 21, 2006.

61.     Defendants joint and several actions against Ms. Alford were undertaken intentionally and under color of law, with knowledge of her rights pursuant to the ADA, the Rehabilitation Act, and Section 1983, and in reckless and intentional disregard and deliberate indifference to those rights; Defendants' actions were also in retaliation for Ms. Alford's assertion of her rights and to her opposition to the illegal harassment and retaliation which pervaded her work environment.

62.     As a result of the Defendants' intentional conduct against Ms. Alford, she has suffered severe emotional distress, permanent debilitation, and financial hardship due to the loss of her earnings capacity.

**VI.     STATEMENT OF CLAIMS**

**COUNT I: HOSTILE ENVIRONMENT UNDER TITLE VII**

63.     The allegations set forth in Paragraphs 1- 62  are reasserted and incorporated by reference herein.

64.     Ms. Alford was subjected to a hostile work environment by and through the actions of her co-worker, Salone Ripley-Long.

65.     Ms. Long directed religious and racial harassment against Ms. Alford which was regular, severe and pervasive, and would have caused a reasonable person to perceive that his/her work environment was hostile.

66.     Defendants were aware of the hostile work environment to which Ms. Alford was subjected by and through their own observations, and because Ms. Alford reported to the harassment to them, and also reported that she perceived Ms. Long's behavior as harassing and unwelcome.

67.     In spite of their knowledge of Ms. Long's harassing behavior, and that Ms. Alford perceived that conduct to be harassing and unwelcome, Defendants failed to take timely or effective remedial action to stop the harassment.

68.     As a result of their failure to take timely and effective remedial action, Plaintiff suffered severe and debilitating emotional distress which, among other things, caused her to lose her earning capacity.

69.     Defendants' failure to take timely remedial action to redress Ms. Long's harassment against Ms. Alford was intentional, altered the terms and conditions of Ms. Alford's employment, and violated her rights pursuant to Title VII of the Civil Rights Act of 1964.

## COUNT II: HOSTILE ENVIRONMENT UNDER THE PHRA

70.     The allegations set forth in Paragraphs 1-69   are reasserted and incorporated by reference herein.

71.     Ms. Alford was subjected to a hostile work environment by and through the actions of her co-worker, Salonie Ripley-Long.

72.     Ms. Long directed religious and racial harassment against Ms. Alford which was regular, severe and pervasive, and would have caused a reasonable person to perceive that his/her work environment was hostile.

73.     Defendants were aware of the hostile work environment to which Ms. Alford was subjected by and through their own observations, and because Ms. Alford reported the harassment to them, and also reported that she perceived Ms. Long's conduct to be harassing and unwelcome.

74.     In spite of their knowledge of Ms. Long's harassing behavior, and that Ms. Alford perceived that conduct to be harassing and unwelcome, Defendants failed to take timely or effective remedial action to stop the harassment.

75.     As a result of their failure to take timely and effective remedial action, Plaintiff suffered severe and debilitating emotional distress which, among other things, caused her to lose her earning capacity.

76.     Defendants' failure to take timely remedial action to redress Ms. Long's harassment against Ms. Alford was intentional and altered the terms and conditions of Ms. Alford's employment, and violated her rights pursuant to the Pennsylvania Human Relations Act.

**COUNT III:  RETALIATION PURSUANT TO TITLE VII**

77.     The allegations set forth in Paragraphs 1-76 are reasserted and incorporated by reference herein.

78.     Plaintiff engaged in protected activity pursuant to Title VII by asserting rights guaranteed by the Act, including her right to be treated in a non-discriminatory manner on the basis of race and religion, when she complained about Ms. Long's regular, severe, and pervasive harassment against her.

79.     By failing to take effective remedial measures in response to Ms. Alford's complaints of discrimination, imposing disciplinary actions against Ms. Alford, and forcing her out of her position in the CSEU, among other things, Defendants retaliated against Ms. Alford due to her opposition to Ms. Long's hostile and discriminatory conduct in a manner which would have been materially adverse to a reasonable worker and which could well dissuade a reasonable worker from making or supporting a charge of discrimination, all in violation of her rights under Title VII.

**COUNT IV:  RETALIATION PURSUANT TO THE PHRA**

80.     The allegations set forth in Paragraphs 1- 79 are reasserted and incorporated by reference herein.

81.     Plaintiff engaged in protected activity pursuant to the PHRA by asserting rights guaranteed by the Act, including her right to be treated in a non-discriminatory manner on the

basis of race and religion, when she complained about Ms. Long's regular, severe, and pervasive harassment against her.

82.     By failing to take effective remedial measures in response to Ms. Alford's complaints of discrimination, imposing disciplinary actions against Ms. Alford, and forcing her out of her position in the CSEU, among other things, Defendants retaliated against Ms. Alford due to her opposition to Ms. Long's hostile and discriminatory conduct in a manner which would have been materially adverse to a reasonable worker and which could well dissuade a reasonable worker from making or supporting a charge of discrimination, all in violation of her rights under the PHRA.

### COUNT V : INTENTIONAL DISCRIMINATION AGAINST PLAINTIFF IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

83.     The allegations set forth in Paragraphs 1-82   are reasserted and incorporated by reference herein.

84 .     Helen Alford is an employee and a qualified person with a disability pursuant to the ADA because her bi-polar disorder and depressive illness substantially limits one or more of her major life activities.

85.     Defendant intentionally discriminated against Plaintiff on the basis of her disability, her record of impairment, and/or because they erroneously perceived the nature and extent of her disability by, *inter alia,* 1) refusing to take Plaintiff's legitimate complaints of harassment and hostile environment discrimination seriously due to her disability; 2) failing to provide Plaintiff with an effective and timely accommodation; and 3) failing to engage in good faith in the interactive process.

86.    Defendants joint and several actions against Ms. Alford on the basis of her disability violated her rights under the Americans with Disabilities Act.

### COUNT VI : INTENTIONAL DISCRIMINATION AGAINST PLAINTIFF IN VIOLATION OF SECTION 504

87.    The allegations set forth in Paragraphs 1- 85  are reasserted and incorporated by reference herein.

88 .    Helen Alford is an employee and a qualified person with a disability pursuant to Section 504 of the Rehabilitation Act because her bi-polar disorder and/or her depressive illness substantially limit one or more of her major life activities.

89 .    Defendant intentionally discriminated against Plaintiff on the basis of her disability, her record of impairment, and/or because they erroneously perceived the nature and extent of her disability by, *inter alia,*  1) refusing to take Plaintiff's legitimate complaints of harassment and hostile environment discrimination seriously due to her disability; 2) failing to provide Plaintiff with an effective and timely accommodation; and 3) failing to engage in good faith in the interactive process.

90.    Defendants joint and several actions against Ms. Alford on the basis of her disability violated her rights under Section 504 of the Rehabilitation Act.

### COUNT VI : INTENTIONAL DISCRIMINATION AGAINST PLAINTIFF IN VIOLATION OF THE PHRA

91.    The allegations set forth in Paragraphs 1-90   are reasserted and incorporated by reference herein.

92 .    Helen Alford is an employee and a qualified person with non-job related handicaps pursuant to the PHRA because her bi-polar disorder and/or her depressive illness

substantially limit one or more of her major life activities.

93 .     Defendant intentionally discriminated against Plaintiff on the basis of her disability, her record of impairment, and/or because they erroneously perceived the nature and extent of her disability by, *inter alia,* 1) refusing to take Plaintiff's legitimate complaints of harassment and hostile environment discrimination seriously due to her disability; 2) failing to provide Plaintiff with an effective and timely accommodation; and 3) failing to engage in good faith in the interactive process.

94.     Defendants joint and several actions against Ms. Alford on the basis of her disability violated her rights under the PHRA, 43 P.S. § 955(a).

### COUNT VII: RETALIATION AGAINST PLAINTIFF PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

95.     The allegations set forth in Paragraphs 1-94   are reasserted and incorporated by reference herein.

96 .     Plaintiff engaged in protected activity pursuant to the ADA by asserting rights guaranteed by the Act, including her right to accommodation and her right to be treated in a non-discriminatory manner in spite of her disability, record of impairment, and/or Defendants' perception thereof.

97 .     Defendants' joint and several conduct, including, *inter alia,* their failure to meaningfully and timely respond to Plaintiff's request for accommodation, their imposition of unfounded discipline against the Plaintiff, and their failure to take effective and remedial action against her legitimate complaints of harassment and hostile environment discrimination because of her disability all constituted illegal retaliation in violation of Plaintiff's rights pursuant to

Section V of the ADA.

### COUNT VIII: RETALIATION AGAINST PLAINTIFF PURSUANT TO SECTION 504 OF THE REHABILITATION ACT

98.     The allegations set forth in Paragraphs 1- 97 are reasserted and incorporated by reference herein.

99  .     Plaintiff engaged in protected activity pursuant to Section 504 by asserting rights guaranteed by the Act, including her right to accommodation and her right to be treated in a non-discriminatory manner in spite of her disability, record of impairment, and/or Defendants' perception thereof.

100.     Defendants' joint and several conduct, including, *inter alia,* their failure to meaningfully and timely respond to Plaintiff's request for accommodation, their imposition of unfounded discipline against the Plaintiff, and their failure to take effective and remedial action against her legitimate complaints of harassment and hostile environment discrimination because of her disability all constituted illegal retaliation in violation of Plaintiff's rights pursuant to Section V of the ADA.

### COUNT IX: RETALIATION AGAINST PLAINTIFF PURSUANT TO THE PHRA

101.     The allegations set forth in Paragraphs 1- 100 are reasserted and incorporated by reference herein.

102.     Plaintiff engaged in protected activity pursuant to the PHRA by asserting rights guaranteed by the Act, including her right to accommodation and her right to be treated in a non-discriminatory manner in spite of her disability, record of impairment, and/or Defendants' perception thereof.

-19-

103.    Defendants' joint and several conduct, including, *inter alia,* their failure to meaningfully and timely respond to Plaintiff's request for accommodation, their imposition of unfounded discipline against the Plaintiff, and their failure to take effective and remedial action against her legitimate complaints of harassment and hostile environment discrimination because of her disability all constituted illegal retaliation in violation of Plaintiff's rights pursuant to the PHRA, 43 P.S. §955 (d).

### COUNT X: DEFENDANT MARIA McLAUGHLIN VIOLATED PLAINTIFF'S FEDERALLY PROTECTED RIGHTS PURSUANT TO THE REHABILITATION ACT AND SECTION 1983

104 .    The allegations set forth in Paragraphs 1-103   are reasserted and incorporated by reference herein.

105.    Defendant McLaughlin, acting in her individual capacity and under color of law, discriminated against the Plaintiff on the basis of her disability and retaliated against her for opposing such discrimination in violation of her rights under the Rehabilitation Act and Section 1983.

106.    Defendant McLaughlin, acting jointly and/or severally with Defendants City of Philadelphia, Philadelphia District Attorney's Office, and/or Defendant Kimmich, took these discriminatory and retaliatory actions against the Plaintiff intentionally, under color of law, and with knowledge and/or deliberate indifference to Plaintiff's federal statutory rights.

107.    A reasonable public official in the place of Defendant McLaughlin would have known that her conduct violated Plaintiff's well-established rights pursuant to Section 504.

**COUNT XI: DEFENDANT RACHEL KIMMICH VIOLATED
PLAINTIFF'S FEDERALLY PROTECTED RIGHTS PURSUANT TO
THE REHABILITATION ACT AND SECTION 1983**

108.    The allegations set forth in Paragraphs 1-107   are reasserted and incorporated by reference herein.

109.    Defendant Kimmich, acting in her individual capacity and under color of law, discriminated against the Plaintiff on the basis of her disability and retaliated against her for opposing such discrimination in violation of her rights under the Rehabilitation Act and Section 1983.

110.    Defendant Kimmich, acting jointly and/or severally with the City of Philadelphia, the Philadelphia District Attorney's Office and/or Defendant McLaughlin, took these discriminatory and retaliatory actions against the Plaintiff intentionally, under color of law, and with knowledge and/or deliberate indifference to Plaintiff's federal statutory rights.

111.    A reasonable public official in the place of Defendant Kimmich would have known that her conduct violated Plaintiff's well-established rights pursuant to Section 504.

**WHEREFORE**, Plaintiff seeks the following relief:

1.    A declaratory judgment that the intentional and deliberate actions of the Defendants jointly and/or severally constituted discrimination and retaliation against Plaintiff based upon in violation of her rights under Title VII, the ADA, the Rehabilitation Act, the Pennsylvania Human Relations Act, and Section 1983.

2.    Award Plaintiff full back pay or its monetary equivalent, retroactive pension benefits,  interest,  and all other emoluments of employment to which she would have been entitled had it not been for the Defendant's discriminatory employment treatment and the

Plaintiff's consequent loss of her earnings capacity;

3.     Against the municipal Defendants, award the Plaintiff compensatory damages for the losses she sustained and the severe emotional distress she suffered as a result of Defendant's discriminatory employment treatment;

4.     Against the individual Defendants, award the Plaintiff compensatory and punitive damages for the losses she sustained and the severe emotional distress she suffered as a result of Defendant's discriminatory employment treatment;

5.     Award Plaintiff and her counsel all costs and attorneys fees which they have incurred and will incur in the prosecution of this action.


                                      Respectfully submitted,


                                      _____
                                      LORRIE McKINLEY, ESQUIRE
                                      Attorney I.D. No. 41211
                                      Counsel for Plaintiff Helen Alford

                                      McKINLEY & RYAN, LLC
                                      16 West Market Street, 3rd Floor
                                      Philadelphia, PA 19102
                                      (610) 436-6060
                                      Fax: (610) 436-6804


                                      DATED: January 29, 2007